**UNITED STATES of America**

v.

**Robert William FORD, et al.**

**Crim. A. No. WN–93–072.**

United States District Court,
D. Maryland.

Feb. 18, 1994.

---

Lynne A. Battaglia, U.S. Atty., D. Md., and Andrew C. White, Asst. U.S. Atty., for U.S.

James K. Bredar, Federal Public Defender, D. Md., and Shirley M. Watts, Asst. Federal Public Defender, for defendant Robert William Ford.

Warren A. Brown, Baltimore, Md., for defendant Keith Milton Austin.

### MEMORANDUM

NICKERSON, District Judge.

Pending before the Court is Defendant's Motion to Dismiss Count II of his indictment (Paper No. 32).[1] The government opposes (Paper No. 35) and Defendant has replied (Paper No. 41). The Court held a hearing on the Motion on February 4, 1994. Upon a review of the motions, consideration of the arguments presented at the hearing, and the applicable case law, the Court determines that Defendant's Motion to Dismiss Count II of his indictment will be DENIED.

### BACKGROUND

In February 1993, a federal grand jury issued a two-count indictment against Ford. Count I of the indictment charges that Ford, "possessing a firearm, took a motor vehicle ... from the person and presence of John Ramsey Redmond by force, violence and intimidation ..." in violation of 18 U.S.C. § 2119 (the "carjacking" statute). Count II of the indictment charges that Ford "knowingly used and carried a firearm ... during and in relation to a crime of violence, to wit, Armed Robbery of an Automobile ..." in violation of 18 U.S.C. § 924(c)(1) (the "firearm" statute). The carjacking statute carries a maximum penalty of fifteen years. The firearm statute carries a mandatory consecutive penalty of five years. On August 4, 1993, Ford pleaded guilty to both counts. He was allowed to amend his guilty plea as to the firearm count and now seeks to dismiss it. In his motion, Ford argues that an imposition of punishment under both the carjacking statute[2] and the firearm statute[3] would violate the Double Jeopardy Clause of the Fifth Amendment which protects a defendant against multiple punishments for the same offense. *Ohio v. Johnson,* 467 U.S. 493, 498, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984) (citations omitted).

### DISCUSSION

■ This motion presents a novel question for this District because of the recent enactment of the carjacking statute. The parties have provided the Court with both published

---

**1.** Co–Defendant Keith Milton Austin has joined Defendant Ford's Motion to Dismiss Count II (Paper No. 37).

**2.** The carjacking statute states in pertinent part, "Whoever, possessing a firearm ... takes a motor vehicle ... from the person or presence of another by force and violence or by intimidation ..."

**3.** The firearm statute states in pertinent part, "Whoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years ..."

and unpublished opinions of the district courts that have considered the issue of whether the two statutes in question proscribe the same offense and whether Congress intended to authorize multiple punishments under them. The district courts are divided on this issue and to date, the Circuit Courts have not decided the question. For the reasons set forth below, the Court determines that while it is debatable whether the carjacking statute and the firearm statute proscribe the same offense, Congress clearly intended to authorize multiple punishments under the two statutes and therefore Ford does not have a double jeopardy claim and his motion to dismiss the firearm count must be denied.

### A. The *Blockburger* Analysis

■ To determine whether two separate statutes proscribe the same offense, the Court looks to the well known *Blockburger* test. Under the *Blockburger* test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Thus, when the two statutes in question each requires proof of a fact that the other does not, Congress is presumed to have intended multiple punishments to be appropriate. As Justice Stewart explained in *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980), "The assumption underlying the [*Blockburger* ] rule

is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary congressional intent."

■ While there is debate as to whether the two statutes constitute the same offense under the *Blockburger* analysis[4], the determination of that question does not end the inquiry. The *Blockburger* test is a "rule of statutory construction" and "it serves as a means of discerning congressional purpose [and the] rule should not be controlling where, for example, there is clear indication of contrary legislative intent." *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981). Just "because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition of . . . cumulative punishments." *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). Indeed, "[w]here Congress intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* (citing *Albernaz*, 450 U.S. at 344, 101 S.Ct. at 1145). Therefore, the dispositive inquiry is whether Congress intended cumulative punishments.

### B. Congressional Intent

Ford argues that Congress did not express its intent to impose cumulative punishments when a single act constitutes a violation of both the carjacking statute and the firearm

---

4. Some courts hold that the carjacking statute and the firearm statute are the same offense under a *Blockburger* analysis. *See United States v. Smith*, 831 F.Supp. 549, 551 (E.D.Va.1993) ("No element of the firearm statute is not also an element of the 'carjacking' statute; the firearm statute requires proof of no additional facts not required by the carjacking statute, and anyone who is proven to have committed the crime of carjacking must necessarily have violated the firearm statute at the same time." *Smith*, 831 F.Supp. at 551 (citations omitted); *see also, United States v. Singleton*, 824 F.Supp. 609 (E.D.La. 1993); *United States v. McHenry*, 830 F.Supp. 1025 (N.D.Ohio 1993); *United States v. Moore*, 832 F.Supp. 335 (N.D.Ala.1993).

Other courts disagree and find that the statutes are distinct because each statute requires proof of at least one additional fact that the other does not. *See United States v. Zukinta*, 830 F.Supp. 418 (E.D.Tenn.1993); *United States v. Harwood*, 834 F.Supp. 950 (W.D.Ky.1993). *Zukinta* reasons that the "mere possession" of a firearm is not enough under the firearm statute to obtain a conviction. The carjacking statute only requires "mere possession" of a firearm and the government need not prove the element that a firearm was used or carried during and in relation to the taking of a motor vehicle.

statute. Because Congress did not clearly indicate its intention to impose consecutive sentences, Ford claims that multiple punishments cannot be imposed under the statutes in question.

The Court disagrees and finds that Congress intended to impose multiple punishment for a conviction under the carjacking and the firearm statute. *Zukinta,* 830 F.Supp. at 420 ("legislative intent of Congress is absolutely clear in the language of [the firearm statute] ... Congress intended [the firearm statute] to provide cumulative punishment for persons convicted under other statutes for committing violent crimes using firearms"; citations omitted). Congress intended, by amending the firearm statute in 1984, that the firearm statute apply to all crimes of violence. The purpose of the 1984 amendment was to "ensure that *all persons who commit Federal crimes of violence,* including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime ..." 1984 U.S.Code Cong. & Admin.News 3182, 3491 (footnote omitted; emphasis added).

The term "crime of violence" as stated in the firearm statute "means an offense that is a felony and

(A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C.A. 924(c)(3) (West Supp.1993).

And in response to the "increase of motor vehicle theft with its growing threat to human life and to the economic well-being of the Nation", Anti Car Theft Act of 1992, H.R. 4542, 102d Cong., 2d Sess. § 101(b), Congress enacted the carjacking statute which makes it a felony for "[w]hoever ... takes a motor vehicle ... from the *person or presence of another by force and violence or by intimidation, or attempts to do so ...*" 18 U.S.C.A. § 2119 (West Supp.1993) (emphasis added). In analyzing the carjacking statute with the firearm statute, there can be no disagreement that the crime of violence, as defined in the firearm statute, also includes the felony of carjacking.

As the *Shavers* court found, Congress amended the firearm statute in 1984 to override the effect of the Supreme Court's interpretation in *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) which held that "Congress did not intend enhanced sentencing under [the firearm statute] when the predicate felony statute has an enhancement provision of its own." *United States v. Shavers,* 820 F.2d 1375, 1377 (4th Cir.1987). Indeed, Congress amended the firearm statute to "expressly provide that it applied to felonious crimes of violence including those which imposed enhanced punishment if committed by the use of a deadly weapon." *Id.* at 1377–1378. In other words, "[t]he amendment makes the punishment imposed by [the firearm statute] for use of a dangerous weapon additional to the punishment imposed for the crime of violence committed by the use of a deadly weapon." *Id.* at 1378. The Circuit Courts agree that a cumulative punishment under the amended firearm statute does not violate Double Jeopardy and have affirmed consecutive sentences imposed for armed bank robbery or assault with a dangerous weapon and violations of the firearm statute. *See e.g., Shavers,* 820 F.2d 1375; *United States v. Martin,* 961 F.2d 161, 163 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 271, 121 L.Ed.2d 200 (1992); *United States v. Lanzi,* 933 F.2d 824, 825–826 (10th Cir.1991); *United States v. Moore,* 917 F.2d 215, 228–230 (6th Cir.1990), *cert. denied,* 499 U.S. 963, 111 S.Ct. 1590, 113 L.Ed.2d 654 (1991); *United States v. Holloway,* 905 F.2d 893, 894–895 (5th Cir.1990); *United States v. Harris,* 832 F.2d 88 (7th Cir.1987); *U.S. v. Blocker,* 802 F.2d 1102, 1104–1105 (9th Cir.1986); and *United States v. Doffin,* 791 F.2d 118 (8th Cir.), *cert. denied,* 479 U.S. 861, 107 S.Ct. 210, 93 L.Ed.2d 140 (1986). In sum, the Court concludes that Congress clearly intended the firearm statute to apply to all crimes of violence, even those where a specif-

ic adjustment has already been made in the underlying statute.

A recent commentary by the sentencing commission is further evidence of Congress' explicit intent that multiple punishment be imposed under the carjacking statute and the firearm statute. That commentary states in pertinent part,

> "any defendant convicted under [the carjacking statute] will receive a minimum additional 5–level increase for possession of a firearm. Such defendants also are subject to prosecution under [the firearm statute] ... [which] carries a mandatory consecutive sentence of at least five years' imprisonment." Government's Response at 8.[5]

The commentary clearly states that a defendant indicted under the carjacking statute is also "subject to prosecution under [the firearm statute] for possession of a firearm during and in relation to a crime of violence." As the *Stinson* court stated, the commentary is the "equivalent of legislative rules adopted by federal agencies" and "is binding on the federal courts." *Stinson v. United States,* — U.S. —, —, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).

Ford next argues that under *Whalen,* "Congress must *clearly* state its intention to impose multiple sentences when the same act constitutes a violation of two separate statutes." Ford's Reply at 12. He claims that Congress has not "explicitly and unequivocally" stated its intent to impose punishment for violations of both statutes and, contrary to the government's reliance on Congressional silence as a manifestation of Congress' in-

tent, "clear intention cannot be gleaned from silence." Id. at 12–13.[6]

While mindful of the *Whalen* requirement, the Court is guided by *Albernaz. Albernaz,* 450 U.S. 333, 101 S.Ct. 1137. In *Albernaz,* the Supreme Court examined whether Congress intended to authorize consecutive punishment under 21 U.S.C. § 846 (conspiracy to distribute) and § 963 (conspiracy to import). The Supreme Court found that the *Blockburger* test had not been met because each statute required proof of one fact that the other did not. Therefore, consecutive sentences should be applied unless Congress clearly did not intend for consecutive sentences. The Supreme Court concluded that:

> "the legislative history is silent on the question of whether consecutive sentences can be imposed for conspiracy to import and distribute drugs. Petitioners read this silence as an 'ambiguity' over whether Congress intended to authorize multiple punishment. Petitioners, however, read much into nothing.... if anything is to be assumed from the congressional silence on this point, it is that Congress was aware of the *Blockburger* rule and legislated with it in mind." *Id.* at 340–342, 101 S.Ct. at 1143–1144.

The Court recognizes that, unlike the *Albernaz* court, it is debatable whether the two statutes in question here meet the *Blockburger* test. However, pursuant to the *Albernaz* interpretation of clear intent versus Congressional silence, the courts are to assume that Congress "was aware of the *Blockburger* rule and legislated with it in mind." And this assumption does not favor Ford's arguments.

---

5. Ford argues that the government's proffer of the sentencing commission's commentary is a "red herring" and informs the Court that the commission's *"failure* to include the language from the proposed guideline is indicative of its disapproval of the notion that [the firearm statute] applies to individuals prosecuted under [the carjacking statute]." Ford's Reply at 10. At the hearing on the present motion, the government claimed that Ford's arguments are disingenuous. The government noted that the sentencing commission's *reason* for an amendment is normally not included in the proposed sentencing guideline and to suggest that the exclusion of the reason for an amendment should be construed as a "disapproval," is not justified.

6. Ford argues that to ascertain legislative intent from silence would be antithetical to the "doctrine of lenity." This doctrine requires that courts not interpret criminal statutes, "so as to increase the penalty that it places on an individual when such interpretation can be based on no more than a guess as to what Congress intended." *Simpson,* 435 U.S. at 15, 98 S.Ct. at 914. Because the Court finds that there is no ambiguity, it will not address this argument. *See also, Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (a statute is not ambiguous "merely because it was 'possible' to articulate a construction more narrow[ly] ...").

Finally, Ford points the Court to the *Smith,* 831 F.Supp. 549 (E.D.Va.1993), decision both for analysis and result and the fact that it is the only district court of the Fourth Circuit to have addressed the identical issues presented in this motion. In *Smith,* the court found that Congress did not clearly intend that cumulative punishments be imposed under the two statutes. *Smith,* 831 F.Supp. at 551.[7]

While the *Smith* case may be persuasive and Ford understandably asks this Court to concur in the analysis and decision, the Court is not bound by the *Smith* decision. The Court, as addressed above, finds that Congress intended that multiple punishment be imposed under the carjacking statute and the firearm statute and concludes that it does not violate double jeopardy.

*CONCLUSION*

This is a case of first impression for this District. While it is debatable whether the carjacking statute and the firearm statute proscribe the same offense, the Court concludes that Congress clearly intended that multiple punishment be imposed under the two statutes in question.

Accordingly, Ford's Motion to Dismiss Count II, the firearm count, of his indictment is DENIED. A separate Order will issue.

### *ORDER*

In accordance with the foregoing Memorandum and the reasons stated therein, IT IS this 18th day of February, 1994, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant's Motion to Dismiss Count II of his Indictment (Paper No. 32) is DENIED;

2. That Co–Defendant Keith Milton Austin's Motion to Dismiss Count II of his Indictment (Paper No. 37) is DENIED; and

3. That the Clerk of the Court mail copies of the Memorandum and Order to all counsel of record.

---

7. The *Smith* court reasoned that: "later statutes receive precedence over earlier statutes and specific statutes receive precedence over more general statutes ... ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity ... and because Congress specifically amended the firearm statute to include drug trafficking crimes and other crimes for which enhanced penalties already exist, but did not include crimes for which use of a firearm is a necessary element, it did not intend to expand the statute to cover this type of crime." *Smith,* 831 F.Supp. at 551–553.